**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MOSES RAMIREZ,

      Plaintiff,

      v.

KATHLEEN SANCHEZ, BARBARA
TRAINA, and CINDY FENNELL,

      Defendants.

Case No. 15-cv-4787

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

Plaintiff Moses Ramirez sued Defendants Kathleen Sanchez, Barbara Traina, and Cindy Fennell under 42 U.S.C. § 1983 for the allegedly inadequate dental care they provided to him at the Kane County jail. [29]. Plaintiff claims that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to dental issues he suffered in 2014. *Id.* Defendants moved for summary judgment on the grounds that Plaintiff failed to exhaust his claims and ultimately fails to show that he received constitutionally inadequate care. [57]. For the reasons explained below, this Court grants Defendants' motion.

**I.      Background**

    **A.      Local Rule 56.1**

The following facts come primarily from Defendants' Local Rule 56.1 statement of undisputed material facts [58]. Plaintiff did not file a statement of additional facts, although he responded to Defendants' statement [62]. Defendants

ask this Court to disregard a number of those responses as inadequate denials of Defendants' proffered facts. *See* [63] at 2–3.

This Court has "broad discretion" to enforce the local rules. *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 655 (7th Cir. 2011). The local rules governing summary judgment motions demand that the non-moving party's responses to the moving party's statements of fact contain "specific references" to record evidence to justify any denial. Local R. 56.1(b)(3); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Thus, purely argumentative denials, legal conclusions, and unsupported general denials do not belong in Local Rule 56.1 statements. *See Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012); *Malec*, 191 F.R.D. at 584. District courts may disregard improper denials and deem the opponent's factual allegations admitted. *See Aberman v. Bd. of Educ. of Chi.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017).

Accordingly, this Court disregards Plaintiff's responses to the following paragraphs of Defendants' statement of facts: 11, 13, 15, 16, 18, 21, 23, 24, 29, 35, 36, 39, 45, 46, 66, 71, 77, and 78. These responses do not cite any record evidence justifying the denial, and merely denying a fact that has evidentiary support "does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment." *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015). This Court also disregards Plaintiff's denials of paragraphs 20 and 53, which cite portions of the record that fail to refute the statement of fact. *See Malec*, 191 F.R.D. at 584. Defendants' corresponding statements of fact are deemed

admitted.  *Aberman*, 242 F. Supp. 3d at 677.

Plaintiff also contests paragraphs 61–63 of Defendants' statement of facts because they interpret a "document not attached to the record."  [62] ¶¶ 61–63.  True, these paragraphs discuss Kane County jail's grievance process, for which Defendants failed to provide any documentation.  But Defendants' statements of fact about that process permissibly rely upon testimony from Plaintiff and Sanchez—the jail's Health Services Administrator—both of whom described a practice they knew about firsthand.  *See* [58] ¶¶ 4, 61–63.  Thus, construing Plaintiff's responses as hearsay objections, this Court overrules that objection.

Finally, Plaintiff objects to various portions of testimony cited by Defendants in their statement of facts as "opinion."  *See, e.g.*, [62] ¶ 47.  But this assertion provides no cognizable basis for discounting Defendant's statements of fact, which are supported by specific citation to admissible record evidence.  *See Malec*, 191 F.R.D. at 583.

## B.    Plaintiff's Cracked Tooth

Beginning around March 2014 and for the period relevant to his claim, Plaintiff was incarcerated at the Kane County jail.[1]  *See* [58] ¶ 1; [60-2] at 2.  On July 13, 2014, Plaintiff bit into something hard at dinner, around 5:00 p.m.  [58] ¶ 7.  By the time he went to bed, around 9:00 p.m., he felt a "sharp pain" and realized he had "a hole" in his tooth.  [60-2] at 5.

Plaintiff testified that he requested medical attention the next day using the

---

[1] This Court understands the parties to refer to the Kane County Adult Justice Center, but uses the parties' phrasing.

computer kiosk available to inmates. *See id.* at 3, 5. The kiosk in Plaintiff's cellblock provided the primary means for Plaintiff to register grievances or submit requests, whether for medical services or commissary items. *See id.* at 3–4. For medical issues, inmates could also submit handwritten forms requesting medical attention by giving them to a corrections officer. *See* [58-5] at 4. When inmates submitted medical requests through the kiosk, the jail's administrative staff or nurses received and distributed the requests. *See id.* at 4–6; [58-3] at 2. The first documented instance of Plaintiff seeking medical attention for his tooth is a notation in his "Medical Progress Notes" from July 16, stating that at the "morning med pass" Plaintiff asked to see a dentist because his molar was cracked, but did not request pain medication. [58-6]; [58] ¶¶ 8–9. Plaintiff disputes that he did not request medication. *See* [60-2] at 5.

On July 17, 2014, Traina—the dentist providing care to inmates—examined Plaintiff. [58] ¶¶ 2, 10. There is no evidence that Traina knew about Plaintiff's dental complaints or request for treatment before July 17. *Id.* ¶ 11. On that day, Traina performed a dental exam and took an x-ray of "tooth #16," Plaintiff's upper left-side third molar (or wisdom tooth). *See id.* ¶ 12; [58-3] at 3–4; [58-18] at 2. She determined that tooth #16 was cracked, "unrestorable," and should be extracted. [58] ¶ 12; [58-7]. Traina testified that dentists sometimes extract even restorable wisdom teeth because they can cause "more problems down the line." [58-3] at 14. Absent "complaints of pain or infection" by a patient, such an extraction could be safely performed weeks or months later. *Id.* Traina did not perform the extraction

on July 17 because she had numerous inmate patients requiring her care that day; absent an emergency, Traina treated inmates on a "first-come, first-serve basis," and Plaintiff did not require emergency treatment. [58] ¶¶ 15–17.

In her initial July 17 exam, Traina did not observe any signs of infection, but she prescribed an antibiotic and motrin, a pain medication, as prophylactic measures. [58] ¶¶ 13–14; [58-3] at 5. The antibiotic ensured that no infection would arise that could compromise the effectiveness of numbing agents used in the eventual extraction, and the motrin prescription ensured that Plaintiff would have access to pain medication if he needed it. [58-3] at 5, 14. At her deposition, Traina did not recall—or see noted in her records—that Plaintiff complained of any pain. *Id.* at 5. One of Plaintiff's medical records—dated July 17—indicates that at some point he complained of pain, but does not clarify if he experienced pain on July 17, or if that merely prompted his appointment with Traina. *See* [58-7] ("pt c/o pain/cracked tooth"). That document also notes Plaintiff's motrin prescription, *id.*, and Plaintiff testified that a nurse gave him ibuprofen on July 17, [60-2] at 7.

The record does not provide the original scheduled date for Plaintiff's extraction. On August 7, however, Plaintiff submitted a kiosk entry asking when his tooth would be removed. [58-8]. The entry does not indicate that Plaintiff experienced pain. *See id.* Traina wrote an undated, handwritten note on Plaintiff's 10:01 a.m. entry telling him that he was "on the dental list" and would be seen "as soon as your turn comes up." *Id.* That note instructed Plaintiff to request additional pain medication as needed. *Id.* Traina testified that, according to her

normal practice and the jail's procedures, she generally received kiosk entries like this one within a week of submission and would give her response to a nurse to return to the inmate at the next med call. [58-3] at 9. Sanchez—a nurse who held a supervisory administrative role during the relevant period—testified that handwritten notes like Traina's were delivered to inmates in paper form, with a copy retained in their medical file. [58-5] at 14–15.

On August 11, Plaintiff again asked when the extraction would take place. [58-9]; [61-8] at 2–3. That kiosk entry does not indicate that Plaintiff was in pain; instead, Plaintiff asked that his payment for treatment be returned since the extraction had not been performed. [58-9]. A corrections officer named John Hickey reached out to the medical administrator on August 19; he then replied to Plaintiff that it was his understanding that Plaintiff had elected to postpone his extraction until after a court date. *See id.*; [61-8] at 2–3.

Plaintiff testified that he had a court date around that time but denied that he voluntarily rescheduled the extraction, indicating that the jail rescheduled medical appointments if a court date arose. *See* [60-2] at 13. Plaintiff admitted, however, that he had no "reason to dispute" that he requested a delay in treatment in August 2014. *Id.* at 7. If an inmate postpones a dental appointment, they fall to the bottom of the list of patients in line for dental care. [58] ¶ 18. The prison medical staff generally informs inmates requesting delays that their request will have this effect. *Id.*; [58-3] at 19. Traina's records contain a note on August 12 that Plaintiff "put in request to delay" his treatment "until after court date 8/21." [58-7];

*see also* [58-3] at 15. Traina testified that she could have performed the extraction on August 12 if Plaintiff "had not asked for the delay." [58-3] at 15.

Hickey closed out the August 11 grievance on August 26 without receiving a further response from Plaintiff. [58-9]. (A duplicate grievance that appears to have been accidentally submitted 20 minutes after the first grievance was closed out on August 19. *See id.*) Plaintiff claimed that he "took" the August 11 grievance "all the way to the commander and to the sheriff" right after the "closing date"—meaning, right after August 26. *See* [60-2] at 14.

On August 13, Plaintiff appears to have met with a member of the jail's medical staff, in response to his kiosk requests. [58-10]. That staff member's notes indicate that Plaintiff "denied the need" for medical assistance and presented no signs of "acute distress." *See id.*; [58-3] at 16.

On September 12, Plaintiff submitted a medical request form "to see a doctor," stating that this was his second such request. [61-2] at 2. The form states that a nurse gave him "some pills that did not help," but does not specify which pills, which nurse, which earlier request he referred to, or what type of care he sought. *See id*.

On September 16, Traina recorded that Plaintiff "missed" his dental appointment because he was "in court." [58-7]. She testified that had Plaintiff attended his appointment she could have performed the extraction. [58-3] at 16. Plaintiff testified that he had no reason to dispute that he had an appointment on September 16, or that he missed it due to a court appearance. [60-2] at 7. On

September 18, Plaintiff's rescheduled appointment had to be canceled because Traina's equipment malfunctioned. [58-7]; [58-3] at 16. Another appointment set for September 23 had to be rescheduled because not enough correctional officers were available to escort inmates to the dental office, as required by the jail's procedures. [58-7]; [58-3] at 17. Plaintiff does not dispute the reasons for these cancellations. *See* [60-2] at 7–8.

### C.    Extraction of Plaintiff's Tooth

Finally, on September 25, 2014, Traina successfully extracted Plaintiff's upper left wisdom tooth (tooth # 16). [58] ¶ 32. Traina did not see Plaintiff between July 17 and September 25, nor was she aware of any complaints from Plaintiff other than his August 7 grievance. *Id*. ¶ 31; [58-3] at 8. On September 25, Traina did not note any swelling or infection around Plaintiff's tooth, although he showed the effects of periodontal disease—a condition leading to bone loss that Traina noted as she performed the extraction. [58-3] at 6–7, 17. Her notes from the extraction say that she gave Plaintiff two carpules of lidocaine—a relatively "small amount" of the numbing agent. *See* [58-7]; [58-3] at 17. Plaintiff recalled receiving up to four injections, stating that he was "still in pain," and Traina told him: "I'm going to have to give you more because it's not working." [60-2] at 9. According to Plaintiff, the fourth injection successfully addressed his pain. *Id*.

After completing the extraction, Traina placed a suture, observed hemostasis (meaning that the extraction area had stopped bleeding), prescribed antibiotics as a prophylactic, and scheduled a follow-up appointment. *See* [58] ¶ 36; [58-3] at 8, 17; [58-13]; [58-14]. Traina noted in her records around 9:30 a.m. that Plaintiff "did not

want any pain medication." [58-13]; [58] ¶ 35. Plaintiff testified that he was in pain after the extraction and that Traina told him he would receive "medication" back in "the pod" (referring to Plaintiff's area or block of the jail). [60-2] at 4, 9–10. Plaintiff says that he experienced "very bad" pain on the "left side" of his head, similar to what he felt before the extraction but "more extreme." *Id*. at 9.

At around 12:45 p.m., Traina recorded that she spoke with a corrections officer in Plaintiff's pod who indicated that Plaintiff was "doing well—no pain meds @ this time." [58-13]. Traina did not know of any issues with Plaintiff or his medication between September 25 and her next appointment with him on October 2. *See* [58] ¶¶ 39, 46; [58-3] at 18. Plaintiff's record of "physician's orders" shows that Traina ordered an antibiotic (clindamycin) for Plaintiff on September 25, but does not indicate that she also ordered a painkiller at that time. *See* [58-14].

On the night of September 25, Plaintiff testified that Fennell, a registered nurse at the jail, refused to give him any medication. [60-2] at 11; [58] ¶ 4. According to Plaintiff, Fennell conducted the nightly medication round and could not give him any medication because he was not on her list of inmates who should receive medication. [60-2] at 11. Plaintiff and Fennell agree that, generally speaking, inmates received medication based upon the prescribed medications listed on the "med pass schedule": if an inmate was on the list, Fennell dispensed the ordered medication; if not, no medication would be dispensed. *See id*.; [58-4] at 12.

Fennell testified that she gave Plaintiff clindamycin (the antibiotic that Traina prescribed) on September 25; she recorded and initialed this dose in

Plaintiff's medication administration record. *See* [58-3] at 8; [58-4] at 6; [61-5] at 1. Fennell also testified that she would have given Plaintiff motrin with the clindamycin as a matter of course, but she did not record dispensing motrin in the medication administration record. *See* [58-4] at 8; [61-5] at 1. Fennell did not otherwise participate in Plaintiff's extraction, [58-4] at 11, and Plaintiff's claim against her is limited to her refusal to provide him medication on September 25, [60-2] at 11, 12; [29] ¶ 9.[2]

Plaintiff testified that he raised the issue of pain medication with Fennell and the corrections officer on duty on the night of September 25. [60-2] at 11–12. On September 26, Plaintiff entered a request through the kiosk, stating:

> I requested something for the pain. I was [denied] medication by Nurse Cindy [Fennell], at 8.23 said she [could] not give me anything because she was [behind] and she needed to get to other pods. Please note I was told I could get any medication I needed for the pain after getting my tooth pulled[.]

[1] at 11. The kiosk records do not show another entry until September 29. *Id.* On September 27, however—one day after Plaintiff's kiosk request, and two days after the extraction—a member of the prison medical staff saw and evaluated Plaintiff. [58] ¶ 38. The staff member conducting the morning "med pass" noted that Plaintiff complained of swelling and throbbing in his left cheek, which was warm, but that Plaintiff's temperature was normal. [58-15]. That same day, Dr. Sood—a physician associated with the jail—ordered a course of 800 milligrams of motrin for Plaintiff

---

[2] Plaintiff's complaint contains a generalized allegation that Defendants failed to provide adequate follow-up care, [29] ¶ 9, but Plaintiff testified that with respect to Fennell, his only claim related to her actions on September 25, [60-2] at 12. Plaintiff's response brief also contends that Fennell failed to respond adequately to Plaintiff's right jaw issues, [60] at 11, but, as explained below, any such allegations exceed the scope of Plaintiff's present suit.

for the next five days, which covered the period until Plaintiff's next appointment with Traina on October 2. *See* [58-14]; [58] ¶ 47. The portion of Plaintiff's medication administration record in evidence shows that he received motrin in addition to the clindamycin beginning on September 27, at least through September 30. *See* [58-4] at 7; [61-5] at 1. (That record does not extend into October 2014.)

No evidence suggests that Traina was at the jail on September 26 or 27; the record reflects that those dates fell on Friday and Saturday, respectively, and that Traina visited patient inmates on Tuesdays and Thursdays. *See* [58] ¶¶ 10, 39. She testified that she never knew that Plaintiff did not receive any prescribed medication after the September 25 extraction. *Id.* ¶ 46.

At 5:00 a.m. on September 28, Plaintiff submitted a medical request form stating that his jaw was swollen and the he was "refused medication the nite before." [61-2] at 1. Plaintiff's medical administration record shows that Plaintiff received clindamycin and motrin on September 28, 29, and 30. [61-5] at 1. Fennell administered his medication on September 30, while other staff dispensed medication on the other dates. *See* [58-4] at 5–6, 7; [61-5] at 1.

The record contains no evidence that Plaintiff complained of pain or lack of medication after September 28. *See generally* [58]; [60]; [61]. On September 29, however, Plaintiff followed up his September 26 kiosk complaint with an entry complaining that the jail charged him for medication that he did not receive; Hickey referred the complaint to the medical administrator on September 30 and closed the entry on October 6. *See* [1] at 11.

On October 2, Traina held her follow-up appointment with Plaintiff. [58] ¶ 47. Both sides agree that as of October 2, the site of the extraction was healing well and showed "no issues." *See id*. ¶¶ 47–48. Traina had no further involvement in Plaintiff's dental care after that appointment. *Id*. ¶ 49.

### D. Grievance Process

As noted above, the kiosk in Plaintiff's cellblock provided the primary means for Plaintiff to communicate his needs. *See* [60-2] at 3–4. Sanchez testified that inmates could designate a kiosk entry as, for example, a request or a grievance, and choose to submit the entry to medical staff, a corrections officer, or another department. *See* [58-5] at 10. A kiosk entry sent to the medical department would reach the administrative staff or nurses on duty. *See id*. at 4–6; [58-3] at 2. If an inmate elected to send an entry to a different recipient, the medical department would not see that request, until or unless the recipient forwarded the message. *See* [58-5] at 10, 11, 14; *see also* [58-9]; [60-2] at 5.

When Plaintiff arrived at the Kane County jail, he received a handbook setting out the jail's grievance procedure. *See* [60-2] at 4. Plaintiff generally submitted grievances through the kiosk. *See id*. at 3–4. Plaintiff testified that if the jail did not resolve a kiosk request to his satisfaction, the next step in the grievance process was to "file to the lieutenant on command," whom the kiosk automatically identified. *Id*. at 4. For most of Plaintiff's requests, Hickey was the lieutenant in command. *See id*. at 13; [58-9]; [58-12]. Finally, inmates could appeal the lieutenant's response to the director in command if they did so within 48 hours of receiving a decision. *See* [60-2] at 4; [58-20].

12

As described above, Plaintiff testified that he requested medical care on July 14, stating: "I put it on the kiosk that I needed sick call." [60-2] at 5. The record contains no documentation of that request. On August 7, Plaintiff submitted a kiosk entry asking about the date of his extraction; the kiosk entry categorizes that request as "medical." [58-8]. On August 11, Plaintiff submitted a kiosk entry again complaining about the delay of his extraction and asking for a refund; the kiosk record categorizes that entry as a "grievance." [61-8] at 2. On September 26, Plaintiff submitted another kiosk entry to Hickey after Fennell did not give him pain medication. [1] at 11. That kiosk record is not specifically categorized, but Hickey and Plaintiff both treated it as a grievance in their correspondence. *See id.*

Plaintiff testified that he appealed his August 11 grievance some time after August 26. *See* [60-2] at 14. On February 22, 2015, Plaintiff filed an appeal covering "all" grievances that he filed between April 23, 2014 and February 13, 2015. [1] at 12; [60-2] at 14. Plaintiff testified that the February 22 appeal constituted the only appeal he filed with respect to the grievances related to his tooth, and covered every grievance on that issue. [60-2] at 14. Plaintiff's appeal contended that it did not fall outside the 48-hour window because there had been "no decision" on any of his grievances. [1] at 12.

On February 23, James Lewis, the Director of Corrections at the Kane County jail, denied Plaintiff's appeal. *See* [58-20]; Kane County Sheriff's Office, *Adult Justice Center Command Staff*, http://kanesheriff.com/Pages/Adult-JC-

Command-Administration.aspx (last visited May 3, 2018).[3]  Lewis informed Plaintiff that he had reviewed all the grievances that Plaintiff filed between the dates listed on his appeal (April 23, 2014 to February 13, 2015) and stated: "All of your grievances were responded to, and you did not appeal those decisions within 48 hours."  *Id*.  Thus, according to the procedures laid out in the "Detainee Handbook," Plaintiff's appeal was untimely.  *See id*.

### E.  The Parties' Experts

Plaintiff initiated this suit in April 2015.  [1].  In March 2016, he amended his complaint, and listed the present defendants: Sanchez, Traina, and Fennell. [29].  Each side retained medical experts.

Plaintiff's expert—Sergio Rubenstein, D.D.S.—reviewed Plaintiff's medical and dental records and submitted a sworn statement discussing two issues: Plaintiff's upper left molar extraction, and swelling, mass, and pain that Plaintiff has experienced in his lower right jaw.  *See* [61] at 4.  Rubenstein stated that because the right jaw issue had—as of November 2017—persisted for three years, it was likely that Plaintiff had suffered an "improper diagnosis and treatment," and that he should have been referred for an MRI and possibly a biopsy.  *Id*.  As to the left molar, Rubenstein stated only that it had been "removed," and that "the extraction of the upper left 3rd molar and lower right side of face/lump/mass/swelling have no correlation."  *Id*.

---

[3] This Court may take "judicial notice of public records and government documents, including those available from reliable sources on the Internet."  *Sleeter v. Actavis Totowa, LLC*, No. 10-653-GPM, 2010 WL 3781261, at *2 n.1 (S.D. Ill. Sept. 21, 2010) (citing *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)).

Defendant's expert—Martin LaPidus, D.D.S.—reviewed Plaintiff's medical records, Rubenstein's report, and each party's deposition, among other materials. [58-18] at 3. LaPidus concluded that the care Traina provided conformed to the appropriate standard of care because: she "appropriately diagnosed" Plaintiff's cracked tooth as a non-emergency; the delay in Plaintiff's extraction did not affect the outcome or otherwise compromise Plaintiff's care, since a non-emergent extraction constitutes an "elective procedure"; extraction constituted an "appropriate course of treatment"; and the follow-up care that Traina provided also conformed to the applicable standard of care. *See id*. at 1–3. LaPidus agreed with Rubenstein that Plaintiff's right-jaw issues in no way connect to Plaintiff's left-molar fracture and extraction. *Id*. at 2.

## II.    Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence

creating an issue of fact, *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), by citing "particular materials in the record," *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). The non-moving party must do more than create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The moving party is entitled to summary judgment where the non-moving party fails to establish an "essential element" of the case for which that party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

## III. Analysis

To raise a claim under § 1983, Plaintiff must show that someone acting under the color of state law deprived him of a constitutional right. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). To establish that Defendants were deliberately indifferent to a medical condition, Plaintiff must show: (1) an objectively serious medical condition; and (2) an official's subjectively deliberate indifference to that condition. *Gonzales v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011).[4] Finally, Plaintiff must demonstrate that each defendant "personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008).

Here, Defendants—all of whom provided medical care or services at the Kane

---

[4] The record suggests that Plaintiff would have been considered a detainee rather than a prisoner during at least some of the relevant period. *See* [60-2] at 3. That status does not alter this Court's analysis since the Prison Litigation Reform Act (PLRA) and the deliberate indifference standard apply equally to prisoners and detainees. *See Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014) (deliberate indifference); *Truly v. Sheahan*, 135 F. App'x 869, 871 (7th Cir. 2005) (PLRA).

County jail—do not contest that they acted under color of state law. *See* [58] ¶¶ 2–4, 5; *see generally* [59]. Nor do Defendants contest for purposes of their motion that Plaintiff's dental issues qualify as a serious medical condition. [59] at 3. Defendants seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies, and in any event cannot prove that any individual defendant acted with deliberate indifference. *See id.* at 4, 14. Defendants also object to arguments in Plaintiff's response brief that attempt to expand the scope of the claim alleged in his complaint. *See* [63] at 3–5. This Court first addresses the proper reach of Plaintiff's claim before turning to the merits of Defendants' motion.

### A.    Claims Presented

Before delving into the nature of Plaintiff's allegations, this Court notes that Plaintiff expressly concedes his claim against Sanchez. [60] at 5 n.1. Accordingly, this Court grants summary judgment to Defendants as to the claim against Sanchez. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (non-moving party abandons claim by not responding to motion for summary judgment in its opposing brief); *Caplan v. United States*, No. 14-c-8235, 2016 WL 4701440, at *7 (N.D. Ill. Sept. 8, 2016) (granting summary judgment because the plaintiff "explicitly" abandoned the claim).

Turning to the scope of Plaintiff's remaining claims, Plaintiff's amended complaint focuses entirely upon the treatment of his left cracked molar and makes no mention of any other dental problems. *See generally* [29]. Plaintiff's deposition, too, discusses the treatment and extraction of his left-side molar. *See generally* [60-2]. But Plaintiff's response to Defendants' summary judgment motion now

references swelling, a mass, and pain in his *right* jaw, in addition to challenging the treatment of his cracked left molar. *See, e.g.*, [60] at 2, 4, 6.

Plaintiff may not advance an "alternative basis" for his claims and attempt to amend his complaint "through arguments in his brief in opposition to a motion for summary judgment." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) (internal quotation marks omitted). Although legal theories may be refined over the course of litigation, plaintiffs may not offer "new and drastic factual allegations" at the summary judgment stage. *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014). That is precisely what Plaintiff attempts to do here by raising a new factual basis for his deliberate indifference claim, so this Court will not consider Plaintiff's right-jaw ailments in assessing his claim. *See id.*

Although Plaintiff attempts to connect his right jaw issues to his complaint, *see* [60] at 4, no such connection exists. The only possible references to Plaintiff's right jaw before his response brief occur in Plaintiff's expert report—which denies any connection between Plaintiff's right jaw symptoms and the treatment of his left molar—and in Plaintiff's deposition, in which he stated that he did not have a cyst in his jaw in July 2014. *See* [61] at 4; [60-2] at 6. Such oblique references—which fail to establish a factual connection between Plaintiff's complaint and the new arguments regarding his right jaw—do not provide a basis for this Court to consider Plaintiff's newly raised allegations. *Cf. Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 718 (N.D. Ill. 2017) (permitting the plaintiff's argument at

summary judgment because it arose from the same events challenged in his complaint, now supported with greater specificity).

Moreover, Plaintiff expressly testified to the nature of his claims against Traina and Fennell, stating that his claims against Traina arose from her treatment of his molar, and his claim against Fennell from her refusal to give him medication in September 2014. *See* [60-2] at 10, 12. Those defining statements align with his amended complaint, *see* [29] ¶¶ 1–9, and thus, Plaintiff may not now expand his claims when faced with summary judgment, *see Whitaker*, 772 F.3d at 808.

Accordingly, this Court addresses Plaintiff's claims against Traina and Fennell arising from the care they provided in relation to his cracked left molar in the summer and fall of 2014.

## B.     Failure to Exhaust

Defendants seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. *See* [59] at 14. Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, prisoners may not bring suits challenging prison conditions unless they have exhausted all available administrative remedies. *See* § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion is mandatory, as is rejection of a prisoner's unexhausted claim. *See Woodford*, 548 U.S. at 85.

The PLRA requires "proper exhaustion" of an inmate's claim, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286

F.3d 1022, 1024 (7th Cir. 2002)).  Thus, to properly exhaust his claims, Plaintiff must have complied with all "deadlines and other critical procedural rules."  *Id.* That includes filing all "complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.  An untimely appeal, or a failure to appeal, thus constitutes a failure to exhaust and results in dismissal of the plaintiff's claim.  *See id.*; *see also Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005).  Exhaustion is an affirmative defense, so the burden of proof lies with Defendants.  *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Here, the record contains neither the Kane County jail's grievance procedure nor its "Detainee Handbook."  It does, however, contain Plaintiff's testimony that grievances must be appealed within 48 hours of receiving a decision, which is corroborated by Director Lewis' February 2015 rejection of Plaintiff's appeal.  *See* [58-20]; [60-2] at 4.  Plaintiff also testified that he received a copy of the detainee handbook when he arrived at the jail, and he discussed the grievance process outlined in the handbook in his deposition, including the requisite window for appeals.  [60-2] at 3–4.

Plaintiff filed various grievances, requests, and complaints relating to the care he received for his left cracked molar, beginning in July 2014.  Some of these do not appear to constitute grievances, insofar as Plaintiff had the ability to categorize his kiosk entries and labeled some of them "grievances" and others "medical" requests.  *See* [58-5] at 10; [58-8]; [61-8] at 2.  Even construing each kiosk entry as a grievance, the record shows that Plaintiff filed his last grievance regarding his left

molar on September 26, 2014. [1] at 11. Plaintiff submitted the only appeal he ever filed on February 22, 2015. *See id.* at 12. The appeal purportedly covered "all" grievances that Plaintiff filed between April 2014 and February 13, 2015, as Plaintiff confirmed in his deposition. [1] at 12; [60-2] at 14. February 22, however, falls far outside the 48-hour window in which Plaintiff could appeal his molar-related grievances, and Director Lewis therefore rejected his appeal as untimely. *See* [58-20]. A claim rejected by prison officials as untimely has not been exhausted, and must be rejected by this Court. *See Pozo*, 286 F.3d at 1025.

Plaintiff argued that he timely filed his appeal because he never received a decision on his grievances. [1] at 12. The records of his grievances, however, all contain the responses conveyed by Kane County jail officials, whether these came from Hickey or Traina. *See, e.g.*, [58-8]; [58-9]. Director Lewis also found that each of Plaintiff's grievances received a response. [58-20]. To the extent that Plaintiff's appeal reflects his own error about what constituted an appealable response, that mistake fails to preserve his claim—a subjective misunderstanding or mistake regarding administrative procedures does not excuse a claim from the PLRA's exhaustion requirement. *See Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) ("A prisoner's lack of awareness of a grievance procedure, however, does not excuse compliance."); *Dole*, 438 F.3d at 811 (collecting cases showing that "the *prisoner's* mistake" does not excuse his claim from the exhaustion requirement); *Price v. Dart*, No. 14-c-4630, 2015 WL 3798435, at *3–4 (N.D. Ill. June 17, 2015) (holding that the plaintiff's claim was barred where he had sufficient notice of the

prison's appeals process and failed to avail himself of it).

The only exception permitting an unexhausted claim to proceed applies when prison officials make a grievance process "practically impossible" to pursue, or otherwise affirmatively prevent an inmate from pursuing his administrative remedies. *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015); *see also Dole*, 438 F.3d at 809–10; *Drew v. Ramos*, No. 11-cv-2938, 2013 WL 5212343, at *6 (N.D. Ill. Sept. 17, 2013) (collecting cases). Plaintiff does not allege—nor does the record show—any such misconduct by Defendants or by Kane County jail officials that prevented him from filing an appeal.

True, a prison's "failure to respond to a prisoner's claim can render" an administrative remedy "unavailable" and thus excuse exhaustion. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). But Defendants offer unrebutted evidence that Kane County officials *did* respond to Plaintiff's grievances. *See, e.g.*, [58-8]; [58-9]; *see also* [1] at 8–13 (showing Hickey's responses to Plaintiff's kiosk entries and in many cases Plaintiff's continued correspondence with Hickey). Here, Plaintiff simply did not understand that those responses constituted an appealable "decision." *See* [1] at 12. That misunderstanding does not constitute affirmative conduct by Kane County officials that could excuse Plaintiff's failure to timely appeal his grievances. *See Price*, 2015 WL 3798435, at *3–4; *cf. Dole*, 438 F.3d at 811 (excusing prisoner's failure to exhaust because he "properly followed procedure" and prison officials mishandled his grievance). In any event, Plaintiff does not now

contend that he never received responses to his grievances, and thus waives that claim. *See generally* [60]; *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

Instead, Plaintiff argues that prison officials led him to believe that his grievances were being addressed, thus inducing him to forego his appeal. *See* [60] at 14, 15. Plaintiff makes this argument only with respect to his complaints about the delay of his extraction, submitted on August 7 and August 11, respectively. *See id.* (citing [61-8] at 1, 3). To the extent that the responses Plaintiff received may constitute affirmative "mishandling" of Plaintiff's grievances, this Court will consider that issue on the merits. *See Ramos*, 2013 WL 5212343, at *6. Because Plaintiff only raises this argument with respect to his August 7 and August 11 complaints—and because no evidence in the record suggests that his failure to appeal his other complaints may be excused—this Court addresses only the issues encompassed in those complaints, namely, the delay of Plaintiff's extraction. *See* [61-8] at 1, 3. Plaintiff's claims as to other aspects of the treatment of his cracked left molar remain unexhausted, unexcused, and barred.

## C.    Delay of Extraction

Accepting for present purposes that prison officials somehow misled Plaintiff into believing that his tooth would be extracted expeditiously, and thus led him to forego an appeal, Plaintiff still fails to show that any delay in extracting his molar amounted to deliberate indifference.

First, the delay of Plaintiff's extraction has no bearing on Plaintiff's claim against Fennell, nor did Fennell participate in this phase of his treatment. *See* [58-4] at 11; [60-2] at 11, 12. Accordingly, Plaintiff must show that the only remaining

defendant—Traina—acted with deliberate indifference with respect to his delayed extraction. The parties agree that Plaintiff's cracked molar presented an objectively serious medical condition, so this Court's analysis focuses upon the subjective component of Plaintiff's deliberate indifference claim.

To satisfy the subjective component, Plaintiff must "provide evidence" that Traina "*actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). This requires showing more than negligence, malpractice, or even "objective recklessness." *Id.* Plaintiffs can satisfy this burden by showing that prison staff ignored "a request for medical assistance"; disregarded an "obvious" risk; departed from accepted professional judgment so substantially that the treater "did not base the decision" on such judgment; or persisted in "a course of treatment known to be ineffective." *Id.* at 729–30.

Here, the record shows that Traina first treated Plaintiff on July 17, 2014. [58-3] at 5. She found that his cracked molar did not present an emergency and prescribed an antiobiotic and motrin as a prophylactic in advance of his eventual extraction. *See* [58] ¶¶ 13–14; [58-3] at 5, 15–17. Absent pain or infection, Traina testified that such an extraction could be safely performed weeks or months after the initial fracture, [58-3] at 14–15, an assessment corroborated by Defendants' expert, *see* [58-18] at 1–3, and uncontroverted by Plaintiff's expert, *see generally* [61]. The record does not reflect—nor does Plaintiff contend—that he suffered pain or infection between his first appointment with Traina on July 17 and his extraction on September 25. Traina did not interact with Plaintiff during that period, except

to respond to his August 7 complaint about the delayed extraction by noting that he was on the dental list, and asking him to "let us know" if he needed more pain medication. [58-8]; [58-3] at 5.

There is no evidence whatsoever that Traina disregarded any risk to Plaintiff, departed from professional norms, or pursued an ineffective course of treatment. Indeed, she successfully extracted Plaintiff's tooth and Plaintiff acknowledged that as of October 2 his mouth had healed well. *See* [60-2] at 10. Nor is there any evidence that Plaintiff suffered pain in the interim—his August 7 and 11 grievances object only to the delay, and neither reference nor seek treatment for any pain. *See* [61-8] at 1, 3. In fact, his August 11 grievance reflects an apparent attempt to cancel the extraction in favor of recouping his medical expenses. *See id.* at 3. Thus, there is no evidence that the delay "exacerbated" Plaintiff's injury, "prolonged" his pain, or in any way compromised the eventual extraction, all of which undermines his claim for deliberate indifference. *See Williams v. Patel*, No. 11-c-9193, 2013 WL 6019543, at *5 (N.D. Ill. Nov. 13, 2013) (citing *Amett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)) (internal quotation marks omitted).

Moreover, the record clearly shows that a number of the delays in scheduling Plaintiff's extraction were due to circumstances outside Traina's control, including Plaintiff's court dates, an equipment failure, and the jail's dearth of security personnel on one occasion. *See* [58-3] at 16–17; [58-7]; [58-9]. Plaintiff does not dispute these events, [60-2] at 7–8, and the Seventh Circuit has long held that

"physicians should not be faulted for time delays beyond their control," including delays caused by court orders, *Johnson v. Loftin*, 464 F. App'x 530, 532–33 (7th Cir. 2012) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)).

Lacking any evidence that the delay here was within Traina's control, resulted in "serious harm or unnecessary pain," or otherwise compromised Plaintiff's treatment, Plaintiff fails to show that Traina demonstrated deliberate indifference to his cracked molar. *See id.* Accordingly, to the extent that Plaintiff sufficiently exhausted this claim, it fails on the merits.

## IV. Conclusion

This Court grants Defendants' motion for summary judgment [57]. Judgment is entered in favor of Defendants and against Plaintiff. Civil case terminated.

Dated: May 8, 2018

Entered:

John Robert Blakey
United States District Judge